BRYAN A. MERRYMAN (134357)
bmerryman@whitecase.com
PRIYA D. SRINIVASAN (320227)
priya.d.srinivasan@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Attorneys for Defendant
FITNESS INTERNATIONAL, LLC
d/b/a LA FITNESS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THOMAS PARISH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITNESS INTERNATIONAL, LLC D/B/A LA FITNESS, a California Limited Liability Company,<br><br>Defendant. | Case No. 8:20-cv-00613-PSG-RAO<br><br>**DEFENDANT FITNESS INTERNATIONAL, LLC d/b/a LA FITNESS'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES; AND**<br><br>**(3) DECLARATION OF ORLANDO GONZALES**<br><br>Date: June 15, 2020<br>Time: 1:30 p.m.<br>Courtroom: 6A<br><br>Complaint Filed: March 27, 2020 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on June 15, 2020, at 1:30 p.m., or as soon thereafter as the motion may be heard, in Courtroom 6A, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, defendant Fitness International, LLC d/b/a LA Fitness ("LA Fitness") will, and hereby does, move the Court for an order (1) compelling arbitration of all claims alleged in the complaint, and (2) dismissing the action or, alternatively, staying the action pending completion of the arbitration.

LA Fitness makes this motion on the ground that plaintiff Thomas Parish and LA Fitness agreed to arbitrate all claims alleged in the complaint.

LA Fitness bases this motion on this notice of motion, the memorandum of points and authorities, the declaration of Orlando Gonzales, all pleadings and records on file herein, those matters of which the Court may properly take judicial notice, and such argument the Court may consider at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 15, 2020.

Dated: April 23, 2020

WHITE & CASE LLP

By: __*/s/ Bryan A. Merryman*_
Bryan A. Merryman

Attorneys for Defendant
FITNESS INTERNATIONAL, LLC
d/b/a LA FITNESS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 1
A. Parish Joins LA Fitness and Agrees to Arbitrate All Disputes ..... 1
B. Parish Sues LA Fitness Despite His Agreement to Arbitrate ..... 2
III. THE COURT SHOULD ORDER ARBITRATION ..... 3
A. The Federal Arbitration Act Governs Any Dispute Regarding Arbitrability ..... 4
B. The FAA Limits This Court's Inquiry to the Validity and the Scope of the Arbitration Agreement ..... 5
1. The Arbitration Agreement Is Valid and Enforceable ..... 5
2. This Dispute Falls Within the Scope of the Arbitration Agreement ..... 6
3. The Arbitrator Has Sole Authority to Decide All Other Issues Concerning the Validity of the Arbitration Provision ..... 7
IV. THE COURT SHOULD DISMISS OR STAY THIS ACTION PENDING ARBITRATION ..... 9
V. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .......... 4

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 4

*Bank Leumi, United States v. Miramax Distribution Servs.*,
LLC, No. 2:18-cv-07574-SVW-KS, 2018 U.S. Dist. LEXIS 222534 (C.D. Cal. Dec. 27, 2018) .......... 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 8

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010) .......... 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 5

*CarMax Auto Superstores CA, LLC v. Hernandez*,
94 F. Supp. 3d 1078 (C.D. Cal. 2015) .......... 4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 5

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .......... 9

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 5

*Dig. Software Servs. v. Entm't Programs, Inc.*,
No. 2:09-cv-02763-MCE-DAD, 2010 U.S. Dist. LEXIS 17202 (E.D. Cal. Feb. 25, 2010) .......... 6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 5

*Galen v. Redfin Corp.*,
No. 14-cv-05229-TEH, 2015 U.S. Dist. LEXIS 161111 (N.D. Cal. Dec. 1, 2015) .......... 7

*Heller v. Rasier*,
2020 U.S. Dist. LEXIS 14288 (C.D. Cal. Jan. 7, 2020).......... 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .......... 7

*Jacobson v. Snap-On Tools Co.*,
No. 15-cv-02141-JD, 2015 U.S. Dist. LEXIS 165234 (N.D. Cal. Dec. 9, 2015) .......... 5, 6

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004).......... 3

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012) .......... 7

*Miguel v. JPMorgan Chase Bank, N.A.*,
2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5, 2013).......... 9

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011).......... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 7

*Ratajesak v. New Prime, Inc.*,
No. 18-SACV-9396-DOC-AGRx, 2019 U.S. Dist. LEXIS 70506 (C.D. Cal. Mar. 20, 2019).......... 9

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 7, 8

*Safadi v. Citibank, N.A.*,
No. 12-1356 PSG, 2012 U.S. Dist. LEXIS 142773 (N.D. Cal. Oct. 2, 2012).......... 7

*Sparling v. Hoffman Constr. Co.*,
864 F.2d 635 (9th Cir. 1988).......... 9, 10

*Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 U.S. Dist. LEXIS 192019 (C.D. Cal. Oct. 29, 2015) .................................... 9

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231 (2014) .......................................................................... 8

*Ware v. Golden 1 Credit Union, Inc.*, 375 F. Supp. 3d 1145 (E.D. Cal. 2019) ............................................................ 5

**FEDERAL STATUTES**

9 U.S.C. § 2 ............................................................................................ 4

9 U.S.C. § 3 ............................................................................................ 10

9 U.S.C. § 4 ............................................................................................ 5

47 U.S.C. § 227(b) ................................................................................ 1, 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Thomas Parish ("Parish") agreed in his written membership agreements to arbitrate all disputes with defendant Fitness International, LLC ("LA Fitness"), unless he opted out of his agreement to arbitrate within 30 days. Parish did not opt out.

On March 27, 2020, Parish filed a complaint, asserting two causes of action, individually and on behalf of a putative class, based on LA Fitness's alleged knowing and/or willful violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA"). Compl. ¶¶ 61-71. The broad scope of the arbitration agreement applies to all claims alleged in the complaint. Yet, Parish has refused to submit this dispute to arbitration.

Both the Federal Arbitration Act ("FAA")—which creates a strong presumption in favor of enforcing arbitration agreements—and federal precedent mandate arbitration here. Accordingly, LA Fitness files this motion to compel arbitration and to dismiss or stay this action pending its completion.

## II. BACKGROUND

### A. Parish Joins LA Fitness and Agrees to Arbitrate All Disputes

LA Fitness operates over 700 gyms and health clubs in 28 states and two provinces in Canada. Declaration of Orlando Gonzales ("Gonzales Decl."), ¶ 4. Parish entered into a membership agreement with LA Fitness on July 8, 2017, *id.* ¶ 7, Ex. A, and again on September 16, 2017, *id.* ¶ 8, Ex. B (the "Membership Agreements"). Parish initialed directly below the arbitration clause of his September 16, 2017 Membership Agreement. *See id.*, Ex. A at 2. He also signed the Membership Agreements, verifying that he acknowledged receipt and understood the entirety of the agreements. *See id.*, Exs. A & B at 1-2.

The Membership Agreements granted Parish access to LA Fitness clubs in exchange for dues. *Id.*, Exs. A & B at 1. The Membership Agreements also

included an arbitration clause, pursuant to which the parties agreed to arbitrate any dispute between them. *Id.*, Exs. A & B at 2. The arbitration provision, which appears conspicuously on the second page of each Membership Agreement in bold, capitalized font, provides in relevant part:

> In the event of any dispute . . . between you and [LA Fitness] . . . you and [LA Fitness] consent to arbitrate that dispute before a single arbitrator under the then current rules of the American Arbitration Association in a location near your [LA Fitness] club, rather than litigate the dispute in court.

*Id.* (emphasis omitted). The arbitration clause also provides that the FAA governs the arbitrability of all disputes and expressly delegates the determination of arbitrability to the arbitrator:

> You and [LA Fitness] also agree that the Federal Arbitration Act governs the arbitrability of all disputes between you and [LA Fitness]. . . . The arbitrator shall interpret and determine the validity of the arbitration provision, including unconscionability.

*Id.* (emphasis omitted). The arbitration clause further provides that Parish agrees "not to participate in a class action, a class-wide arbitration, claims brought in a representative capacity, or consolidated claims involving another person's account if [LA Fitness] is a party to the proceeding." *Id.* (emphasis omitted). Finally, the clause provides that if Parish does not want to be bound by the arbitration provision, he must notify LA Fitness in writing "within 30 days of the date you first receive this agreement." *Id.* (emphasis omitted). Parish did not exercise his right to opt out of arbitration.[1] *Id.*, ¶ 9.

**B. <u>Parish Sues LA Fitness Despite His Agreement to Arbitrate</u>**

Despite having agreed to arbitrate any dispute with LA Fitness, Parish filed this lawsuit against LA Fitness on March 27, 2020. The complaint alleges on or

---

[1] Through the Membership Agreements, Parish also "consent[ed] . . . to receiving telephone calls from LA Fitness, its affiliates and business partners . . . including to receive news of special offers and programs." Gonzales Decl., Exs. A & B at 2; *see also id.*, ¶ 10 & Ex. C (executed guest pass agreement authorizing LA Fitness to contact him regarding promotions or special events).

around September 24, 2019, LA Fitness sent a text message from a 10-digit phone number to Parish's telephone number encouraging Parish to purchase a gym membership and offering discounts. *See* Compl. ¶¶ 24-27, 32. The complaint alleges Parish never provided LA Fitness with express written consent to contact him using an automatic telephone dialing system, which Parish alleges LA Fitness used. *See id.*, ¶¶ 28-30. The complaint alleges LA Fitness used a messaging platform to automatically generate phone numbers and store them, and then send text messages to those numbers without human intervention. *See id.*, ¶¶ 33-38. The complaint alleges LA Fitness's messaging platform controls how quickly text messages are sent depending on network congestion. *Id.*, ¶ 44.

The complaint asserts two causes of action: (1) violation of 47 U.S.C. § 227(b)(1)(A)(iii), *id.*, ¶ 62; and (2) violation of 47 U.S.C. § 227(b), *id.*, ¶¶ 69-70. Despite Parish's agreement to arbitrate this dispute and not to participate in a class action against LA Fitness, Parish seeks to represent a putative class of "[a]ll persons in the United States who, within four years prior to the filing of this action, (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, (4) without prior express consent of the recipient, or with the same manner of purported consent Defendant claims to have obtained from Plaintiff, if any." *Id.*, ¶¶ 50-51.

## III. THE COURT SHOULD ORDER ARBITRATION

Putting aside the lack of merit in Parish's claims,[2] as a threshold issue, this dispute does not belong in this Court because Parish agreed to arbitrate this and any

---

[2] This motion addresses only the parties' agreement to arbitrate because the Court's role in ruling on a petition to compel arbitration does not include consideration of the underlying merits. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Nevertheless, the complaint lacks merit. LA Fitness does not own or control the telephone number that allegedly sent the text message to Parish, and LA Fitness prohibits its employees from using self-created advertising or marketing materials and sending any type of unsolicited individual or group text message to solicit or advertise special deals or other membership opportunities. Gonzales Decl. ¶ 11.

other dispute with LA Fitness. Pursuant to the directives of the FAA, the Court should: (1) order arbitration of all claims alleged in the complaint; and (2) dismiss this action or stay it pending completion of the arbitration.

### **A. The Federal Arbitration Act Governs Any Dispute Regarding Arbitrability**

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal citation omitted). Section 2 of the FAA provides that written arbitration provisions in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA applies to the arbitration agreement here, which expressly and unambiguously provides: "You and [LA Fitness] also agree that the Federal Arbitration Act governs the arbitrability of all disputes between you and [LA Fitness]." Gonzales Decl., Exs. A & B at 2. A court must enforce the agreement of contracting parties to apply the FAA. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes, and 'the rules under which that arbitration will be conducted'" (internal citation and emphasis omitted)).

LA Fitness operates over 700 gyms and health clubs in 28 states. Gonzales Decl., ¶ 4. This transaction between Parish, a Florida resident, and LA Fitness, based in the Central District, "involved interstate commerce" and, therefore, the FAA governs it. *CarMax Auto Superstores CA, LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100 (C.D. Cal. 2015) (FAA provides for enforcement of arbitration agreements within the full reach of the Commerce Clause); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (termite prevention contract

"involved interstate commerce" where defendants operated in multiple states and materials used to perform the contract came from outside Alabama).

The FAA strongly favors enforcement of arbitration agreements and places arbitration agreements on equal footing with all other contracts. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006) (citing 9 U.S.C. § 2). In determining whether a particular dispute should be arbitrated, the FAA leaves "no place for the exercise of discretion." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Rather, the FAA requires the court to direct the parties to arbitrate any issues with respect to which a valid arbitration agreement exists. *Id.*

**B. <u>The FAA Limits This Court's Inquiry to the Validity and the Scope of the Arbitration Agreement</u>**

In ruling on a motion to compel arbitration under the FAA, a court may determine only (1) whether a valid arbitration agreement exists, and, if so, (2) whether the arbitration agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4); *see also Ware v. Golden 1 Credit Union, Inc.*, 375 F. Supp. 3d 1145, 1150 (E.D. Cal. 2019) (same). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

**1. The Arbitration Agreement Is Valid and Enforceable**

This Court may, at most, decide whether a valid arbitration agreement exists. *Chiron*, 207 F.3d at 1130. "When deciding whether a valid arbitration agreement exists, courts generally apply 'ordinary state-law principles that govern the formation of contracts.'" *Heller v. Rasier*, 2020 U.S. Dist. LEXIS 14288, *13 (C.D. Cal. Jan. 7, 2020) (Gutierrez, J.) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. *Jacobson v. Snap-On Tools Co.*, No. 15-cv-02141-JD, 2015 U.S. Dist. LEXIS 165234, at *6

(N.D. Cal. Dec. 9, 2015) (citing *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010), *superseded by statute on other grounds*). Once the moving party establishes the existence of an arbitration agreement, the burden shifts to the opposing party to establish the factual basis for a defense to enforcement. *Id.*

Here, LA Fitness has met its burden of showing a valid arbitration agreement exists. As discussed above, the Membership Agreements include an arbitration clause that appears conspicuously on the second page of the document in bold, capitalized font. Gonzales Decl., Exs. A & B at 2. Parish agreed to arbitration by initialing the arbitration provision itself and by signing the Membership Agreements containing the arbitration provision, verifying his receipt and understanding of the entirety of the agreements. *Id.*, Exs. A & B at 1-2. The Membership Agreements gave Parish the right to opt out of the arbitration agreement within 30 days, but he declined to exercise that right. *Id.*, ¶ 9.

### 2. <u>This Dispute Falls Within the Scope of the Arbitration Agreement</u>

Parish cannot credibly contend the arbitration agreement does not encompass this dispute. "[W]hen parties include a broad arbitration provision, every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract should be sent to arbitration." *Dig. Software Servs. v. Entm't Programs, Inc.*, No. 2:09-cv-02763-MCE-DAD, 2010 U.S. Dist. LEXIS 17202, at *8-9 (E.D. Cal. Feb. 25, 2010) (internal quotations and citation omitted).

Here, the arbitration provision encompasses "***any dispute***" between Parish and LA Fitness (whether or not arising out of the Membership Agreements), other than a dispute within the jurisdiction of a small claims court. Gonzales Decl., Exs. A & B at 2. Here, Parish sues because he alleges LA Fitness contacted him about an "Exclusive Membership Offer." Compl. ¶ 24. Each of Parish's claims involves

a dispute between him and LA Fitness and, thus, falls within the scope of the arbitration agreement.

The conclusion that Parish's claims fall within the scope of the arbitration provision is bolstered by the Supreme Court's holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (holding the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution").

**3. The Arbitrator Has Sole Authority to Decide All Other Issues Concerning the Validity of the Arbitration Provision**

While the FAA presumes the Court is to decide the validity of an arbitration agreement, parties to a contract may delegate that authority to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding court must enforce parties' "agreement to arbitrate threshold issues" regarding arbitrability of their dispute). Importantly, "unless [a plaintiff] challenge[s] [a] delegation provision *specifically*, [a court] must treat it as valid . . . and enforce it . . . , leaving any challenge to the validity of the [agreement to arbitrate] as a whole for the arbitrator." *Id.*, 561 U.S. at 72.

If the contract "clear[ly] and unmistakab[ly]" delegates this question to the arbitrator, *id.*, "a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Instead, [the court] must stay the suit, compel arbitration, and allow the arbitrator to determine whether the arbitration agreement and the rest of the contract are enforceable." *Safadi v. Citibank, N.A.*, No. 12-1356 PSG, 2012 U.S. Dist. LEXIS 142773, at *8-9 (N.D. Cal. Oct. 2, 2012).

A clause in an arbitration agreement that delegates validity issues to the arbitrator is effective when it is: (1) clear and unmistakable; and (2) not revocable under state law doctrines such as fraud, duress, or unconscionability. *Galen v.*

*Redfin Corp.*, No. 14-cv-05229-TEH, 2015 U.S. Dist. LEXIS 161111, at *14 (N.D. Cal. Dec. 1, 2015) (citing *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014); *Rent-A-Center*, 561 U.S. at 70 n.1). The delegation clause in the Membership Agreements is valid, and clear and unmistakable.

**a. The Delegation Clause Is Clear and Unmistakable**

A delegation clause is clear and unmistakable "where the agreement explicitly assigns [the issue of arbitrability] to the arbitrator." *Rent-A-Center*, 561 U.S. at 65. The Membership Agreements contain this explicit language: "[t]he arbitrator shall interpret and determine the validity of the arbitration provision, including unconscionability." Gonzales Decl., Exs. A & B at 2. Parish and LA Fitness "clearly and unmistakably agreed to delegate to the arbitrator any disputes about the scope of arbitration over the claims Plaintiff raises in this action" through the contract language "requiring arbitration of disputes over the 'scope or applicability' of arbitration." *Bank Leumi, United States v. Miramax Distribution Servs.*, LLC, No. 2:18-cv-07574-SVW-KS, 2018 U.S. Dist. LEXIS 222534, at *17-18 (C.D. Cal. Dec. 27, 2018) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (same)).

Moreover, in the Membership Agreements, the parties evidenced their intent to grant the arbitrator the authority to determine issues of arbitrability by agreeing to arbitrate "before a single arbitrator under the then current rules of the American Arbitration Association." Gonzales Decl. Exs. A & B at 2. "[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotations and alterations omitted). By incorporating the AAA Rules, the parties demonstrated a clear and unmistakable election to have the arbitrator decide the validity of their arbitration agreement.

     **b. The Delegation Clause Is Valid**

Finally, Parish has not challenged the validity of the delegation clause in the Membership Agreements. Even if he had, nothing suggests the delegation is revocable under state law. *See Ratajesak v. New Prime, Inc.*, No. 18-SACV-9396-DOC-AGRx, 2019 U.S. Dist. LEXIS 70506, at *15 (C.D. Cal. Mar. 20, 2019) (upholding similar delegation clause against an unconscionability challenge). Therefore, the arbitrator, not the Court, must decide all remaining defenses to the validity of the arbitration agreement, including fraud, duress, and unconscionability.

In any event, the arbitration agreement is not unconscionable. The agreement: (1) allows the consumer to opt out; (2) provides a convenient forum for the consumer to resolve disputes; and (3) to the extent it is deemed "non-negotiable or primarily non-negotiable," is subject to the consumer friendly rules of the AAA. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (opportunity to opt out precludes finding of procedural unconscionability); Gonzales Decl., Exs. A & B at 2; *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 16865, *11 (C.D. Cal. Feb. 5, 2013) (Gutierrez, J.) ("Plaintiff cannot claim that he failed to review the provisions of the Arbitration Agreement where he signed a document to indicate that he read it.").

## IV. THE COURT SHOULD DISMISS OR STAY THIS ACTION PENDING ARBITRATION

When a court grants a motion to compel arbitration, it shall also dismiss or stay the action until the arbitration concludes. This Court may dismiss the case because the arbitration clause in the Membership Agreements bar all claims alleged in the complaint. "Dismissal is proper where the entirety of a plaintiff's claim is subject to arbitration." *Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 U.S. Dist. LEXIS 192019, *13-14 (C.D. Cal. Oct. 29, 2015) (Gutierrez, J.) (dismissing action where each cause of action arose from conduct governed by arbitration agreement and citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635,

637-38 (9th Cir. 1988)). The "provision for stay in 9 U.S.C. section 3" does not prevent a court from acting in its discretion to dismiss all claims entirely. *Sparling*, 864 F.2d at 637-38 (dismissing action where "plaintiffs could not possibly win relief" because all claims were subject to arbitration agreement and section 3 of the FAA does "not limit the court's authority to grant a dismissal"). This Court should dismiss the complaint because the arbitration agreement clearly encompasses all of its claims.

## V. CONCLUSION

For the foregoing reasons, LA Fitness respectfully requests the Court enter an order granting this motion to compel arbitration and dismissing this action.

Dated: April 23, 2020

WHITE & CASE LLP

By: *__/s/ Bryan A. Merryman__*
Bryan A. Merryman

Attorneys for Defendant
FITNESS INTERNATIONAL, LLC
d/b/a LA FITNESS