UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**    #16 (6/15 hrg off)

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    Order GRANTING Defendant's motion to compel

Before the Court is Defendant Fitness International LLC's ("Defendant") motion to compel Plaintiff Thomas Parish ("Plaintiff") to arbitration. Dkt. # 16 ("*Mot.*"). Plaintiff has opposed, *see* Dkt. # 20 ("*Opp.*"), and Defendant replied, *see* Dkt. # 24 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion.

I.    Background

A.    Factual Background

This is a Telephone Consumer Protection Act case wherein Plaintiff alleges that he received an unsolicited text message from Defendant. *See Complaint*, Dkt. # 1 ("*Compl.*"), ¶¶ 24–28. Defendant owns and operates hundreds of gyms across the country. *Declaration of Orlando Gonzales*, Dkt. # 16-1 ("*Gonzales Decl.*"), ¶ 4. Plaintiff entered into a membership agreement ("July 2017 Agreement") with Defendant on July 8, 2017 at Defendant's location in North Miami, Florida. *See id.* ¶ 7, Ex. A ("*July 2017 Agreement*"). Defendant alleges that Plaintiff also entered into another membership agreement with it in September 2017 ("September 2017 Agreement"), although Plaintiff disputes this allegation. *See id.* ¶ 8, Ex. B ("*September 2017 Agreement*"). The agreement was for a monthly dues membership that was not to last more than thirty-six months. *See July 2017 Agreement* at 1. Plaintiff agreed to pay monthly dues until cancellation either by him or the club. *See id.*

Both agreements contain identical arbitration provisions. The arbitration provisions state, in pertinent part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

> <u>Agreement to Arbitrate all Disputes</u>. IN THE EVENT OF ANY DISPUTE (OTHER THAN ONE FILED IN A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS) BETWEEN YOU AND [DEFENDANT] . . . YOU AND [DEFENDANT] CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR UNDER THE THEN CURRENT RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN A LOCATION NEAR YOUR LAF CLUB, RATHER THAN LITIGATE THE DISPUTE IN COURT. YOU AND [DEFENDANT] ALSO AGREE THAT THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES BETWEEN YOU AND [DEFENDANT].

*July 2017 Agreement* at 2; *September 2017 Agreement* at 2. The arbitration clause also contains a class arbitration waiver and an opt-out provision. *July 2017 Agreement* at 2; *September 2017 Agreement* at 2.

After signing the membership agreement, Plaintiff made an initial payment, but never paid any dues. *See Declaration of Thomas Parish*, Dkt. # 20-1 ("*Parish Decl.*"), ¶ 4. Plaintiff visited both the North Miami location and another location several times, but states that he stopped after December 2017. *See id.* ¶ 5. Plaintiff does not state that he ever cancelled his membership, nor that Defendant notified him that it was terminating his membership.

On September 24, 2019, Plaintiff received a text message, purportedly from Defendant, offering him an enrollment fee waiver and other discounts. *See id.* ¶ 7; *Compl.* ¶¶ 24–27. Plaintiff alleges that he replied "[s]top." *See Compl.* ¶ 24. In January 2020, Plaintiff visited Defendant's location in Miami Gardens, Florida. *See Parish Decl.* ¶ 8. An employee told Plaintiff that he had overdue membership fees and that in order to use the location's equipment, he would need to secure a guest pass. *See id.* ¶ 9. Plaintiff signed up for a sixty-day guest pass. *See id.*

B. <u>Procedural History</u>

On March 27, 2020, Plaintiff filed a putative class action in this Court. *See generally Compl.* He broadly alleges that Defendant sent him, and others similarly situated, text messages without consent in violation of the Telephone Consumer Protection Act ("TCPA"). *See id.* ¶¶ 24–29; 50–52. Plaintiff alleges the following two causes of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

<u>First Cause of Action</u>: Violations of the TCPA, 47 U.S.C. § 227(b).  *Id.* ¶¶ 61–67.

<u>Second Cause of Action</u>: Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b).  *Id.* ¶¶ 68–72.

Defendant now moves to compel Plaintiff to arbitration based on the provision in the agreements.  *See generally Mot.*

II.  <u>Legal Standard</u>

"The 'principal purpose' of the FAA [Federal Arbitration Act] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The FAA states that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original).  When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

If an arbitration agreement exists and covers the dispute at issue, section 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement."  *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

III.  Discussion

Of the two threshold issues for the Court to determine, whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue, Plaintiff only challenges the second. *See generally Opp.* The scope of an arbitration agreement is a matter of contract. In interpreting the agreement, courts "must look to the express terms of the agreements at issue to determine whether [the parties] intended [the matters at issue] be arbitrated." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013). As stated above, any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24–25.

Plaintiff makes two arguments as to why this dispute is not covered under either arbitration agreement. First, Plaintiff argues that the agreements terminated before Defendant sent the text message in September 2019. *See Opp.* 4–6. Second, Plaintiff argues that the arbitration agreement does not cover disputes arising under the TCPA. *See id.* 6–7. The Court takes each argument in turn.

A.  Termination

In its motion, Defendant puts forth both the July 2017 Agreement and the September 2017 Agreement as valid agreements to arbitrate the parties' dispute. *See generally Mot.* Plaintiff argues that the current dispute does not fall within the scope of these agreements because Defendant terminated his membership before it sent him the text in September 2019.[1] *See Opp.* 4–6.

Defendant has satisfied its initial burden to provide a valid arbitration agreement. The July 2017 Agreement includes an arbitration clause. *See July 2017 Agreement* at 2. The clause reads, in bold: "IN THE EVENT OF ANY DISPUTE . . . BETWEEN YOU AND [DEFENDANT] . . . YOU AND [DEFENDANT] CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR." Moreover, Defendant acknowledges signing this agreement, creating a valid and enforceable contract. *Parish Decl.* ¶ 2.

---

[1] The Court does not address Plaintiff's argument that the September 2017 Agreement is invalid because Plaintiff did not sign it. *See Opp.* 5:17–22. Even accepting this argument as true, Plaintiff must arbitrate his claim against Defendant under the July 2017 Agreement, which Plaintiff does not dispute signing. *See Parish Decl.* ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

Next, Plaintiff does not provide evidence that the July 2017 Agreement was terminated at the time Defendant allegedly sent the text message in September 2019. The agreement is a monthly dues membership that imposes fees on Plaintiff "UNTIL YOU CANCEL." *July 2017 Agreement* at 1. The agreement also states that it "will not be for a period over 36 months." *Id.* Plaintiff does not state that he provided Defendant with a written notice of intent to cancel, which the agreement requires for termination. *See id.* Instead, he argues that he terminated the agreement because he stopped paying dues and going to Defendant's facilities. *See Parish* ¶ 4; *Opp.* 5:7–16. But, nothing in the agreement or its arbitration provision suggest that either act terminates Plaintiff's agreement. Plaintiff's statements thus do not convince the Court that he terminated the agreement before Defendant sent the text message.

Plaintiff's argument that Defendant terminated the agreement also misses the mark. Plaintiff argues that the Court should infer that Defendant terminated the agreement because the alleged text message offered him the opportunity to waive his enrollment fee, and a manager at one of Defendant's locations told him in January 2020 that he needed a guest pass to use the gym. *See Opp.* 5:17–22. As an initial matter, Plaintiff does not provide any direct evidence that Defendant terminated the agreement. However, even if the Court credits this argument, arbitration agreements "survive[ ] contract termination when the dispute [is] over an obligation arguably created by the expired agreement." *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977). In this case, the dispute over whether Plaintiff ever consented to receiving text messages from Defendant is covered in the July 2017 Agreement.[2] *See July 2017 Agreement* at 2. Finally, as to the guest pass issue, Plaintiff's membership status in January 2020 has no bearing on his membership status in September 2019 when the allegedly offending text message was sent. *See Parish Decl.* ¶¶ 7–8.

In short, Defendant has produced a valid arbitration agreement and Plaintiff has not provided evidence that either party had terminated the agreement when Defendant allegedly sent the text message. The Court next evaluates whether the agreement covers disputes under the TCPA.

---

[2] The July 2017 Agreement states, in pertinent part: "Buyer hereby consents (1) to receiving telephone calls from [Defendant], its affiliates and business partners, at any telephone number noted on page 1, including to receive news of special offers and programs, and for purposes related to Buyer's account information; and (2) to the use of an electronic signature to record Buyer's commitment to the terms of this Agreement." *July 2017 Agreement* at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

B. TCPA Claims

Plaintiff also argues that the July 2017 Agreement does not cover TCPA claims because the agreement's core provides for monthly dues in exchange for state-wide access to Defendant's fitness clubs. *See Opp.* 6:7–10.

It is widely accepted that "'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). However, it is also well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc, v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004) (internal citations omitted). Accordingly, "arbitration should only be denied where 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers*, 363 U.S. at 582–83).

The Court concludes that Plaintiff's TCPA claim is covered under the arbitration agreement. The arbitration provision in the July 2017 Agreement states that Plaintiff consents to arbitrate "ANY DISPUTE (OTHER THAN ONE FILED IN A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS)." *See July 2017 Agreement* at 2. As other courts within this District have held, "sweeping language" like "any dispute" covers a broad range of disputes that may arise between parties to an arbitration agreement, even those that may arise outside of the agreement. *See, e.g.*, *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1180 (C.D. Cal. 2012). The Court thus agrees with other courts that have specifically held that "any dispute" and similar language specifically covers TCPA claims. *See Brown v. DIRECTV, LLC*, No. CV 13-1170-DMG (Ex), 2019 WL 6604879, at *6 n.9 (C.D. Cal. Aug. 5, 2019) ("Furthermore, the class's TCPA claims fall within the scope of the post-merger clause, given that it governs 'all disputes and claims between' DIRECTV and its customers, regardless of the legal basis of the dispute or claim."); *Selby v. Deutsche Bank Tr. Co. Ams.*, No. 12-CV-01562 AJB BGS, 2013 WL 1315841, at *8 (S.D. Cal. Mar. 28, 2013).

The cases that Plaintiff cites in support of his position are distinguishable because they analyze narrower arbitration provisions. Plaintiff cites cases such as *Doe v. Princess Cruise Lines*, 657 F.3d 1204, 1218 (11th Cir. 2011), to argue that his dispute with Defendant must arise out of the agreement. *See Opp.* 6–7. But the arbitration agreements in cases like *Princess Cruise Lines*, unlike the arbitration provision here, were limited to disputes "relating to or in any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-613 PSG (RAOx) | Date | June 10, 2020 |
|---|---|---|---|
| Title | Thomas Parish v. Fitness International, LLC | | |

way arising out of or connected with" the underlying agreement. *See Princess Cruise Lines*, 657 F.3d at 1218; *see also Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1113 (11th Cir. 2001) ("the circuit lease contract between TMI and WTC required arbitration of all disputes 'arising out of or relating to this service agreement'"). And, as courts within this District have recognized, arbitration clauses encompassing "any dispute arising between the parties" are even broader than "arising in connection with" arbitration language. *See, e.g.*, *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, No. CV 00-5684, 2000 WL 34017119, at *5 (C.D. Cal. Sept. 18, 2000). Accordingly, the Court finds Plaintiff's citation to these inapplicable cases unpersuasive.

As such, the Court **GRANTS** Defendant's motion to compel arbitration.

IV.    Dismissal

Defendant asks the Court to dismiss the claim or, in the alternative, to stay proceedings. *See Mot.* 9–10. Dismissal is proper where the entirety of a plaintiff's claim is subject to arbitration. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637–38 (9th Cir. 1988) (dismissal was appropriate where "plaintiffs could not possibly win relief" because all of their claims were subject to arbitration agreement and section 3 of the FAA does "not limit the court's authority to grant a dismissal"); *see also Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, No. CV15-5099 PSG (JPRx), 2015 WL 13546433, at *5 (C.D. Cal. Oct. 29, 2015).

Because the entirety of Plaintiff's claim is subject to arbitration, the Court **DISMISSES** the action.

V.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to compel. The case is **DISMISSED**.

This order closes the case.

**IT IS SO ORDERED.**